Cynthia A. GUILLEBEAU, Petitioner,

v.

**DEPARTMENT OF THE NAVY, Respondent.**

No. 03–3220.

United States Court of Appeals, Federal Circuit.

DECIDED: March 24, 2004.

George M. Chuzi, Kalijarvi, Chuzi, & Newman, P.C., of Washington, DC, argued for petitioner.

Sonia M. Orfield, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Jeanne Davidson, Deputy Director.

Before MICHEL, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Respondent Department of the Navy ("Navy") removed petitioner Cynthia A. Guillebeau ("Guillebeau") from her position as an Engineer, alleging that she was performing her work in an unsatisfactory manner. Guillebeau seeks review of the decision by the Merit Systems Protection Board ("Board") upholding her removal. *Guillebeau v. Dep't of the Navy,* 93 M.S.P.R. 379 (2003) ("Final Order"). We affirm the Board's decision.

## BACKGROUND

Guillebeau was employed by the Navy as an Engineer to develop web pages at the Science, Technology, and Analysis Department in Panama City, Florida. Her position there was part of an agency demonstration project, which was approved by the Office of Personnel Management ("OPM") pursuant to 5 U.S.C. § 4703. Subsection 4703(a) provides OPM with the authority to conduct demonstration projects for which it may waive the statutory and regulatory requirements that ordinarily apply to government personnel, subject to limitations set forth in subsection 4703(c). As part of the Navy demonstration project, OPM waived a number of statutory and regulatory provisions, for example, the requirement that OPM separately review and approve the agency's performance appraisal system, 5 U.S.C. § 4304(b)(1) (2000). Science and Technology Reinvention Laboratory Personnel Demonstration Project at the Naval Sea Systems Command Warfare Centers, 64 Fed. Reg. 39,179, 39,181 (July 21, 1999).

On October 8, 1999, the Navy issued Guillebeau a notice of unsatisfactory work performance, which "set forth numerous examples of her unacceptable performance." Final Order, 93 M.S.P.R. at 380. In addition, the notice included a performance plan that the Navy had developed to

aid Guillebeau in achieving an acceptable level of performance. The performance plan set forth four "quality standards" by which her performance was to be judged.[1] *Id.* at 381.

Initially, Guillebeau was assigned to develop two sets of web pages by December 17, 1999. The performance plan's deadline was twice extended, to January 5, 2000, and February 4, 2000, respectively. *Id.* at 380. The Navy removed Guillebeau effective March 31, 2000, because she had completed only one of her five specified tasks.

Guillebeau filed an appeal of the Navy's decision to remove her on April 28, 2000. Upon Guillebeau's request, this appeal was dismissed without prejudice on September 7, 2000, so she could retain legal counsel. Guillebeau refiled her appeal on November 6, 2000. On June 25, 2001, an administrative judge reversed the Navy's decision to remove Guillebeau, holding that the Navy's "performance standards were absolute, and therefore, invalid." *Guillebeau v. Dep't of the Navy*, No. AT0432000542–I–2, slip op. at 3 (M.S.P.B. June 25, 2001) ("Initial Decision"). The Initial Decision required the Navy "to provide interim relief to [Guillebeau] in accordance with 5 U.S.C. § 7701(b)(2)(A)" if either party filed a petition for review. *Id.*, slip op. at 7. Guillebeau was returned to pay status on June 25, 2001, and, on July 27, 2001, the Navy certified to the Board that it had provided Guillebeau with the interim relief as ordered. The Navy stated that it had "returned [Guillebeau] to pay status; however, because of the undue disruption that

would be placed on the [Navy] due to her lack of access to classified information she has not been physically returned to duty." (App. at 30.) On July 30, 2001, the Navy petitioned the Board for review of the Initial Decision.

The Navy had previously temporarily suspended Guillebeau's security access because she had exhibited "recent behavior and conduct [that] raised security concerns," including conversations with co-workers about committing suicide and statements that obsessive-compulsive disorder had "significant impact on [her] in the workplace." (App. at 68.) On various occasions, Guillebeau had declined to undergo medical examinations.

As a result of the security clearance issues, Guillebeau was indefinitely suspended without pay on August 29, 2001, effective September 2, 2001. Guillebeau filed a cross-petition for review and a motion on September 24, 2001, seeking dismissal of the Navy's petition for review and arguing that the Navy had not complied with the interim relief order by suspending her pay on September 2, 2001.[2]

In its Final Order, the Board denied Guillebeau's motion to dismiss the Navy's petition for review based on the Navy's alleged failure to comply with the interim relief order, "finding no basis upon which to grant the ... motion." Final Order, 93 M.S.P.R. at 382. The Board also reversed the administrative judge, holding that Guillebeau's performance standard was not absolute because the standard was not ap-

---

1. The quality standards required that: (1) All web pages be peer reviewed prior to final submission; (2) all web pages conform to the format for Coastal Systems Station web pages and technical content be at the "public release" level; (3) all issues from the peer review be resolved and comments incorporated into the final submission; and (4) the final submission be provided in electronic and printed form.

Final Order, 93 M.S.P.R. at 381 n. 3.

2. The Board's regulations provide that "[f]ailure by an agency ... to provide evidence of compliance in response to a Board order ... may result in the dismissal of the agency's petition or cross petition for review." 5 C.F.R. § 1201.115(b)(4) (2003).

plied in an absolute manner. The Board noted that Guillebeau was not removed because the Navy applied one of the four quality standards in an absolute manner; rather, as the Navy found, she was removed because, "despite extensions and considerable agency assistance, [Guillebeau] failed to complete the majority of the projects she was tasked to complete." *Id.* at 383–84. Thus, the Board held that the Navy "properly removed [Guillebeau] for failing to complete the majority of the projects assigned her." *Id.* at 384. Guillebeau timely filed an appeal on May 27, 2003. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must sustain the Board's decision unless it is "found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## I

 Guillebeau first argues that the Board erred in declining to dismiss the government's appeal from the Initial Decision for failure to comply with the interim relief order. The pertinent statute provides that an employee who prevails in an Initial Decision "shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review." 5 U.S.C. § 7701(b)(2)(A). The statute further provides:

> If an agency makes a determination [that returning the employee to work would be unduly disruptive to the work environment] that prevents the return

or presence of an employee at the place of employment, such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of any petition for review....

*Id.* § 7701(b)(2)(B). The Initial Decision ordered the Navy to cancel Guillebeau's removal and ordered interim relief if either party filed a petition for review. Guillebeau argues that the order was violated when, after the Initial Decision, the Navy suspended her pay on September 2, 2001.[3] However, the Board's pertinent regulation merely provides: "Failure by an agency ... to provide evidence of compliance in response to a Board order ... *may result in the dismissal of the agency's petition or cross petition for review.*" 5 C.F.R. § 1201.115(b)(4) (emphasis added). On its face, the regulation simply gives the Board discretion to dismiss an appeal if the government does not comply with an interim relief order.

This interpretation is bolstered by the history of the regulation itself, which was originally drafted to require dismissal of an appeal, providing: "Failure of the agency to submit evidence that it has complied with the granting of interim relief ..., or that it has provided notification that interim relief will not be granted fully ..., *will result in the dismissal of the agency's petition or cross petition for review.*" 5 C.F.R. § 1201.115(b)(4) (1990) (emphasis added). We considered the earlier version of this regulation in *DeLaughter v. United States Postal Service*, 3 F.3d 1522 (Fed. Cir.1993). In that case, we held that "[b]ecause the Postal Service failed to comply with the directives contained in [5 U.S.C. § ]7701(b)(2)(A), the Board had no choice but to dismiss the Postal Service's petition

---

3. Guillebeau had been returned to pay status on June 25, 2001, in accordance with the interim relief order.

for review." *Id.* at 1525. Accordingly, we remanded the case "to the Board with directions to dismiss the Postal Service's petition for review pursuant to 5 U.S.C. § 7701(b)(2)(A) and 5 C.F.R. § 1201.115(b)(4)." *Id.* The Board amended the regulation on May 24, 1999, after the *DeLaughter* case, replacing the word "will" with "may." *See* 64 Fed. Reg. 27,-899, 27,900 (May 24, 1999). The amendment was clearly designed to eliminate the mandatory dismissal requirement and to give the Board discretion to dismiss or not dismiss an appeal if the government fails to comply with an interim relief order.

The petitioner here argues that, although dismissal of the Navy's petition for review was not mandatory, the Board was required to provide a more specific explanation for its action. We disagree. The Board stated:

> The appellant has filed a motion to dismiss the agency's [petition for review] for failure to comply with the [administrative judge's] interim relief order. Although the appellant acknowledges that she was initially restored to pay status, she asserts that the agency subsequently suspended her without pay and that the suspension violated the [administrative judge's] order. . . .
>
> After due consideration, and *finding no basis upon which to grant the appellant's motion to dismiss the agency's [petition for review] for failure to comply with the [administrative judge's] interim relief order*, we DENY the motion.

Final Order, 93 M.S.P.R. at 381–82 (emphasis added) (citations omitted). The Board thus appeared to hold that that the interim relief order was not violated. The record supports such a finding.

 "Neither the Whistleblower Protection Act [of 1989, Pub. L. No. 101–12, 103 Stat. 16] nor the interim relief order can insulate an appellant from a subse-quent adverse action *so long as that action is not inconsistent with the initial decision.*" *Barcliff v. Dep't of the Navy*, 62 M.S.P.R. 428, 433 (1994) (emphasis added); *see also Rothwell v. United States Postal Serv.*, 68 M.S.P.R. 466, 468 (1995); *Shumate v. Dep't of the Navy*, 62 M.S.P.R. 288, 290 (1994); *Crespo v. United States Postal Serv.*, 53 M.S.P.R. 125, 129 (1992). In these cases, the Board held that the interim relief order only protects the appellant from adverse actions based on the events underlying the action in which the interim relief order was granted, not events that are unrelated to the interim relief order. Here, the original Navy action removing Guillebeau was not based on the suspension of her security clearance, and the Board did not consider the suspension as a basis for the personnel action. In contrast, the Navy's later decision to suspend Guillebeau without pay effective September 2, 2001, did result from the suspension of Guillebeau's security clearance and access to classified information, "without [which she could not] perform the full range of duties of [her] position." (App. at 25.) Because the record supports a finding that the indefinite suspension of Guillebeau's security clearance and access to classified information, rather than events related to Guillebeau's failure to complete her work, was the cause of her September 2, 2001, suspension without pay, and because the indefinite suspension occurred after the interim relief order, the Board could properly conclude that the suspension was not inconsistent with the interim relief order. *See In re Huston*, 308 F.3d 1267, 1280–81 (Fed.Cir.2002) (holding that agency rulings may be upheld if they are supported by the record).

Even if the Board's opinion were read as simply declining to dismiss without regard to the alleged violation, there still would be no reversible error. Granting the remedy of dismissal is not mandatory, and, even if

the Board believed that the agency's action violated the order, it could appropriately conclude that the employee should have pursued another remedy, such as an enforcement action after the Final Order pursuant to 5 C.F.R. § 1201.182.[4]

We hold that the Board did not err in declining to dismiss the appeal.

## II

### A

■ This leads us then to the merits. The petitioner argues that the Navy adopted an absolute performance standard; that such standards are barred except "where death, injury, breach of security, or great monetary loss could result from a single failure to meet the performance standard measuring performance of a single critical element," (Br. of Pet'r at 24 n. 12 (quoting *Callaway v. Dep't of the Army*, 23 M.S.P.R. 592, 599 (1984))); and that it does not matter that the standard was not applied to Guillebeau in a rigorous manner. The Navy responds that the standard here was not absolute. We disagree. "The Board has interpreted an absolute performance standard as one providing that a single incident of poor performance will result in an unsatisfactory rating on a job element." *Boyd v. Dep't of the Navy*, 88 M.S.P.R. 435, 439 (2001).

The petitioner's performance standard included four "quality standards":

(1) All web pages be peer reviewed prior to final submission; (2) all web pages conform to the format for Coastal Systems Station web pages and technical content be at the "public release" level; (3) all issues from the peer review be resolved and comments incorporated

into the final submission; and (4) the final submission be provided in electronic and printed form.

*Final Order*, 93 M.S.P.R. at 381 n. 3. As the administrative judge found, on their face, these standards are absolute. The petitioner was required to satisfy all four of these standards, and each standard's requirement is absolute because it applies to "all web pages," *id.*, providing no exceptions. In addition, the petitioner's supervisor, testified that, with regard to the four quality standards, "the [petitioner] could make no errors, that it was either all or nothing." *Initial Decision*, slip op. at 3 (internal quotation marks omitted). We disagree that other evidence supports a finding that the performance standard by its express terms was not absolute. Therefore, the performance standard that applied to the petitioner was absolute, as the administrative judge properly held in the Initial Decision.

### B

■ Having decided that the substantive requirements of the statute were absolute under the Board's criteria, we must decide whether the statute bars absolute performance standards. The Navy argues that OPM was authorized to waive and did waive the requirements of section 4302 pursuant to section 4703, and thus waived the prohibition of absolute performance standards. Section 4703 was enacted in section 601 of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95–454, 1978 U.S.C.C.A.N. (92 Stat.) 1111, 1186–88. That section authorizes OPM to waive certain statutory and regulatory requirements that ordinarily apply to government per-

---

4. The Board's regulations provide: "If the appellant is not the prevailing party in the final Board order, and if the appellant believes that the agency has not provided full interim relief, the appellant may file an enforcement petition with the regional office under § 1201.182." 5 C.F.R. § 1201.116. We need not decide what other avenues are available to enforce the interim relief order. *See King v. Jerome*, 42 F.3d 1371, 1375 (Fed.Cir. 1994); *Kerr v. Nat'l Endowment for the Arts*, 726 F.2d 730, 733 (Fed.Cir.1984).

sonnel. *See* 5 U.S.C. § 4703(a).[5] The provision was intended to reduce the centralization and rigid application of the rules governing civil service, which had become problematic under the previous civil service system. *See Civil Service Reform: Hearings on H.R. 11280 Before the House Comm. on Post Office and Civil Service,* 95th Cong. 44–45 (1978) (statement of Alan K. Campbell, Chairman, U.S. Civil Service Commission).

However, while Congress "recognized the need to allow OPM adequate flexibility to develop new approaches to Federal personnel management policies and procedures, it was concerned about the dangers inherent whenever any Federal agency is given authority to waive provisions of law." S.Rep. No. 95–969, at 94, *reprinted in* 1978 U.S.C.C.A.N. 2723, 2816. Therefore, the statute imposed limits on OPM's authority under subsection 4703(a). Subsection 4703(c) provided: "No demonstration project under this section may provide for a waiver of ... any rule or regulation prescribed under this title, if such waiver is inconsistent with *any merit system principle.*" 5 U.S.C. § 4703(c)(5) (emphasis added). Section 4703(c)(5) thus prohibits waiver of any of the merit system principles set forth in 5 U.S.C. § 2301, which is

titled "Merit system principles," 5 U.S.C. § 2301. Among these merit system principles is the principle that "[e] *mployees should be retained on the basis of the adequacy of their performance,* inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance *to meet required standards.*" *Id.* § 2301(b)(6) (emphases added). These basic merit system principles "must be adhered to by agencies in all performance-based actions." *Lovshin v. Dep't of the Navy,* 767 F.2d 826, 840 (Fed.Cir.1985) (*en banc*).

The questions of whether and to what extent section 4703(c) authorizes waiver of the requirement that agencies establish reasonable performance standards is a difficult one, and we need not decide it here because we conclude that neither the statute nor the regulations bar absolute performance standards, even in the absence of a waiver. Section 4302 provides:

(b) Under regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for—

(1) *establishing performance standards which will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of*

**5.** Subsection 4703(a) provides:

Except as provided in this section, the Office of Personnel Management may, directly or through agreement or contract with one or more agencies and other public and private organizations, conduct and evaluate demonstration projects. Subject to the provisions of this section, the conducting of demonstration projects shall not be limited by any lack of specific authority under this title to take the action contemplated, or by any provision of this title or any rule or regulation prescribed under this title which is inconsistent with the action, including any law or regulation relating to—

(1) the methods of establishing qualification requirements for, recruitment for, and appointment to positions;

(2) the methods of classifying positions and compensating employees;

(3) the methods of assigning, reassigning, or promoting employees;

(4) the methods of disciplining employees;

(5) the methods of providing incentives to employees, including the provision of group or individual incentive bonuses or pay;

(6) the hours of work per day or per week;

(7) the methods of involving employees, labor organizations, and employee organizations in personnel decisions; and

(8) the methods of reducing overall agency staff and grade levels.

5 U.S.C. § 4703(a).

*objective criteria* (which may include the extent of courtesy demonstrated to the public) *related to the job in question for each employee or position under the system.*

5 U.S.C. § 4302 (emphases added). The Board has interpreted this statute in *Callaway* and subsequent cases as generally barring absolute performance standards. In *Callaway,* the Board noted that "[t]he plain meaning of the statutory language does not, *per se,* preclude the use of absolute performance standards" and that "nothing in the legislative history indicates that Congress intended to do so." 23 M.S.P.R. at 597. Nevertheless, the Board went on to hold that:

the establishment of absolute performance standards, particularly when the standards evaluate performance of a critical element, would generally be inconsistent with Congressional intent in enacting the performance provisions of the CSRA and could, therefore, constitute an abuse of discretion.

*Id.* at 598. In subsequent cases, the Board has further extended its prohibition of absolute performance standards, holding that "their establishment will generally constitute an abuse of discretion unless death, injury, breach of security, or great monetary loss could result from a single failure to meet the performance standard." *Sullivan v. Dep't of the Navy,* 44 M.S.P.R. 646, 652 (1990).

The Board thus focuses on the performance standard itself, rather than its application in a particular case. Indeed, the Board has rejected the argument that a performance standard that is absolute on its face can be valid if it is not applied to a particular employee in an absolute manner. *See Mendez v. Dep't of the Air Force,* 62 M.S.P.R. 579, 582–83 (1994). Thus, the Board judges performance standards in the abstract, without regard to how the standards are applied to a particular employee in a particular case, unless the employee has received advance notice that the standard would not be applied in an absolute manner. *See id.*

We think that the Board has misconstrued the statute and erroneously created a prohibition of nearly all performance standards that it deems absolute. "The starting point in discerning congressional intent is the existing statutory text. . . . It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Tr.,* —— U.S. ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). We thus look first to the text of the statute. The statute itself does not bar absolute performance standards; rather, it merely requires that performance standards, "to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria." 5 U.S.C. § 4302(b)(1). Indeed, the Board itself noted that the statutory language does not bar absolute performance standards. *Callaway,* 23 M.S.P.R. at 597.

Nor does the legislative history support the Board's prohibition of absolute performance standards. The statute was enacted as part of the CSRA. § 203, 1978 U.S.C.C.A.N. (92 Stat.) at 1132–33. The Senate Report does not indicate that absolute performance standards are to be prohibited; rather, it states that section 4302(b) permits government agencies "great flexibility to choose or develop their own systems." S.Rep. No. 95–969, at 42, *reprinted in* 1978 U.S.C.C.A.N. at 2764. The Report further notes that "[a]gencies should determine what type of performance appraisal methods best suit their

needs." *Id.* Therefore, the legislative history indicates congressional intent to permit government agencies latitude in crafting performance appraisal systems to fit their needs. There is no expression of intent to prohibit absolute performance standards. We conclude that, based upon a careful reading of the statute and the legislative history, the statute is not ambiguous. It cannot be read to bar absolute performance standards.[6]

■ Thus, we hold that the statute does not bar absolute performance standards, and we specifically disapprove of the Board's decisions in the *Callaway* line of cases. However, there is an extensive body of law, both in our court, *see, e.g., Wilson v. Dep't of Health & Human Servs.*, 770 F.2d 1048, 1052 (Fed.Cir.1985); *Lovshin*, 767 F.2d at 842, and at the Board, *see, e.g., Boyd*, 88 M.S.P.R. at 441; *Walker v. Dep't of the Treasury*, 28 M.S.P.R. 227, 229 (1985), holding that performance standards must be reasonable, based on objective criteria, and communicated to the employee in advance. Thus, we do not suggest that an agency may adopt an unreasonable standard or that absolute performance standards are always reasonable. For example, it might be unreasonable for an agency to adopt a standard permitting so few errors in pulling medical records from files that, based upon the number of records the employee is required to pull, the employee must be at least 99.91% accurate. *Blain v. Veterans Admin.*, 36 M.S.P.R. 322, 325 (1988). But the petitioner has not argued on this appeal that the performance standard here was invalid because it was unreasonable,

only that it was invalid because it was absolute. *See, e.g., Boyd*, 88 M.S.P.R. at 441 (holding that "although the [agency's] remaining standards are not absolute, they are invalid because they are unreasonable"). Here, it is quite clear that the Board also concluded that the performance standard was not implemented in an unreasonable manner. As the Board noted:

> [The agency] did not deem [Guillebeau's] performance unacceptable because one of a number of the web pages she was tasked with designing was not peer reviewed or did not conform to the appropriate format, or because less than 100% of the technical content was at the "public release" level. It did not find her performance unacceptable because she made a single error in that regard that justified her removal. Rather, the agency found, and indeed the appellant does not deny, that she simply failed to complete the assigned work during the period provided, even as extended.

Final Order, 93 M.S.P.R. at 383 (citation omitted). That aspect of the decision is supported by substantial evidence. The performance standard applied to the petitioner, although it was absolute, was applied to her reasonably. The petitioner was removed for failure to complete her assigned work, despite several deadline extensions. Such a removal is permissible.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

*AFFIRMED.*

---

6. The government correctly notes that the OPM publication *A Handbook for Measuring Employee Performance: Aligning Employee Performance Plans with Organizational Goals* (2001) ("OPM Handbook"), *available at* http://www.opm.gov/perform/wppdf/2002/handbook.pdf, does not establish the absolute performance requirement. Instead, it merely summarizes the Board's law in that respect. *See* OPM Handbook at 55.

## COSTS

No costs.