NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3127

ROLAND A. DOBSON,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Roland A. Dobson, of Virginia Beach, Virginia, pro se.

Sean B. McNamara, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director. Of counsel on the brief was Patricia R. Reddy-Parkinson, Assistant Counsel, Department of the Navy, of Virginia Beach, Virginia.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3127

ROLAND A. DOBSON,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Petition for review of the Merit Systems Protection Board in DC0432070408-I-1.

_____

DECIDED: July 21, 2008

_____

Before LOURIE, BRYSON, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Roland A. Dobson appeals the final decision of the Merit Systems Protection Board, which affirmed his removal from his position with the Department of the Navy for unacceptable performance. We <u>affirm</u>.

## BACKGROUND

Mr. Dobson worked as a human resources specialist at the Navy's Military Sealift Command in Virginia Beach, Virginia. In 2005, Mr. Dobson was sent a letter of caution about his job performance, and in 2006 he was placed on a performance improvement

plan ("PIP"). The plan included a description of Mr. Dobson's past job performance problems, how Mr. Dobson could improve his work, and the details of how he would be monitored during a 60-day evaluation period.

At the end of the monitoring period, the Navy proposed to remove Mr. Dobson based on five violations of "critical element #2" of the performance appraisal system. That element set forth the following requirements:

> Accepts work assignments, properly follows instructions, uses technical knowledge, applies skills and plans, organizes and works effectively and efficiently to produce products and/or services of good quality in a timely and responsive manner. Anticipates and analyzes problems and determines solutions that include improvement of work processes. Promotes teamwork: works well with others and takes responsibility as either a team leader or team member as required.

After Mr. Dobson had an opportunity to respond to the notice, the Navy removed him for unacceptable performance.

Mr. Dobson appealed his removal to the Board. Following a hearing, the administrative judge who was assigned to the appeal upheld Mr. Dobson's removal. The full Board denied a petition for review. Mr. Dobson now petitions for review by this court.

DISCUSSION

1. Citing the Board's decision in Johnson v. Department of the Interior, 87 M.S.P.R. 359 (2000), Mr. Dobson first argues that the PIP was invalid because it held him to an impermissible "absolute" standard of performance. However, this court has disapproved the line of Board decisions that includes Johnson on the ground that chapter 43 of Title 5, which governs performance appraisals of federal employees and adverse actions based on unacceptable performance, does not prohibit the use of

absolute standards. <u>Guillebeau v. Dep't of the Navy</u>, 362 F.3d 1329, 1337 (Fed. Cir. 2004).

<u>Guillebeau</u> emphasizes that performance standards must be "reasonable, based on objective criteria, and communicated to the employee in advance." 362 F.3d at 1337. The court added that by holding that there is no strict bar to absolute performance standards, it did not mean to suggest "that an agency may adopt an unreasonable standard or that absolute performance standards are always reasonable." <u>Id.</u> The court made clear, however, that a demanding standard is not necessarily an unreasonable one. Indeed, even in <u>Johnson</u>, on which Mr. Dobson relies, the Board upheld a performance standard system that permitted the employee to receive no more than four customer complaints during her evaluation period. 87 M.S.P.R. at 366-67. In this case, Mr. Dobson was presented with a list of criteria describing critical element #2, and he was allowed two errors. Although he objects to that standard, he has not presented any specific argument as to why that number of errors, although small, represented an unreasonable error rate, nor has he provided any reason to believe that the required level of performance was unobtainable.

2. Mr. Dobson argues that the PIP was invalid because critical element #2 was too vague. He contends that the Navy simply used part of his position description rather than a standard explicitly designed for evaluation purposes. The administrative judge concluded that the part of the PIP that Mr. Dobson was charged with violating, critical element #2, was valid, stating that "the evidence of record does not show, and the appellant has not established, that the cited performance element and associated performance standard was vague, unreasonable, improper, and/or unattainable."

Moreover, the administrative judge noted that "[p]erformance elements and standards may be derived from the employee's official position description." The administrative judge also found that Mr. Dobson had never asked his supervisors for clarification of any of the elements, although he was given several opportunities to do so. Accordingly, we reject Mr. Dobson's argument that the Board erred in concluding that the PIP was invalid on the ground that it was too vague.

In his reply brief, Mr. Dobson directs this court's attention to several Board decisions to support his assertion that the PIP was impermissibly vague. See Smith v. Dep't of Veterans Affairs, 59 M.S.P.R. 340 (1993) ("Smith I"); Burroughs v. Dep't of Health & Human Servs., 49 M.S.P.R. 644 (1991); Smith v. Dep't of Energy, 49 M.S.P.R. 110 (1991) ("Smith II"); Shuman v. Dep't of the Treasury, 23 M.S.P.R. 620 (1984). However, Smith I is among the cases that were disapproved by Guillebeau, discussed above. Shuman addresses only the right of an employee to present evidence as to whether performance standards were been adequately communicated, 23 M.S.P.R. at 632-33, and Mr. Dobson does not allege that he was precluded from presenting any such evidence.

The remaining two cases address the issue of vagueness, but they do not warrant overturning the Board's findings in this case. In Smith II, the Board affirmed the administrative judge's determination that the use of the word "sometimes" in a standard for marginally acceptable performance was impermissibly vague. 49 M.S.P.R. at 116. By contrast, in this case the administrative judge found that critical element #2 was not impermissibly vague, and the holding in Smith II provides no basis for overturning that highly factual inquiry as a matter of law, especially given the differences between the

standard in that case and the one at bar, which notably does not use any word such as "sometimes." In Burroughs, the Board determined that the performance improvement plan identified unacceptable performance through the use of negative terms rather than identifying the conduct that was necessary to achieve minimally acceptable performance. 49 M.S.P.R. at 650-51. In this case, the Board concluded that critical element #2 identified what was required for acceptable performance. Accordingly, Burroughs does not warrant overturning the Board's decision.

3. Mr. Dobson asserts that his removal must be overturned because his supervisors "did not fully comprehend" the performance appraisal system, and that they did not communicate it to him adequately. In his reply brief, Mr. Dobson further develops that argument, citing Jimenez-Howe v. Department of Labor, 35 M.S.P.R. 202 (1987), and Smith II. In Jimenez-Howe, the Board explained that the communication requirement would be satisfied if the agency communicated "to the employee the standards he must meet in order to be evaluated as demonstrating performance at a level which is sufficient for retention" and that agencies "may give sufficient specificity to their performance standards by written and oral instructions to meet the statutory requirements." 35 M.S.P.R. at 207-08 (internal quotation marks omitted); see also Smith II, 49 M.S.P.R. at 116-17 ("an agency must communicate to the employee performance standards that are sufficiently specific to provide the employee with a firm benchmark toward which to aim his performance, and not an elusive goal that the agency may find the employee met or failed to meet at its pleasure"). In Mr. Dobson's case, the Board found that Mr. Dobson's supervisors understood the standards and that they attempted to communicate them to Mr. Dobson through the performance

improvement plan and through verbal communication from his first-level supervisor. Mr. Dobson's arguments do not undermine those findings made by the Board, which are supported by substantial evidence.

4. Mr. Dobson argues that it was unclear whether there were "two, three, or four critical elements." As we noted above, Mr. Dobson's removal was based only on critical element #2, and therefore this argument, which goes to the structure of the performance plans in general, is not directly pertinent to Mr. Dobson's removal. The administrative judge noted that the performance plans given to some employees listed four critical elements even though their titles stated that there were only three. Mr. Dobson's plan did not contain that error, however. His argument therefore presents no basis for reversal.

5. Mr. Dobson next claims that the Navy never presented proof that the performance plan or the acceptable error rate under that plan was ever submitted to a human resources specialist for analysis. An agency's performance appraisal system must be approved by the Office of Personnel Management before the agency can seek to remove an employee for unacceptable performance under chapter 43. 5 U.S.C. § 4304(b)(1). There is, however, no requirement for a plan to be submitted to a human resource specialist. Mr. Dobson cites Daigle v. Department of Veterans Affairs, 84 M.S.P.R. 625 (1999), for the proposition that an "agency must establish their performance action is based on a valid performance standard as approved by OPM." That case, however, establishes the rule that an agency does not need to submit updated proof that its performance improvement plan was approved by the OPM unless

approval is directly called into question during proceedings before the Board. The Board explained that

> [w]hile the agency's burden of proof was an important element in the early implementation of the new law, this case provides an opportunity to revisit the merits of continuing the current Board policy. Twenty years have passed since the enactment of the Civil Service Reform Act. There is no statutory requirement for renewing approval of an agency's performance appraisal system once in place, and we are unaware of any agency which has not received OPM approval of its performance appraisal system. Therefore, we conclude that it is no longer necessary to perpetuate an outmoded paperwork requirement.

Id. at 630-31. Daigle therefore modifies the rule described in the other case cited by Mr. Dobson, Stenmark v. Department of Transportation, 59 M.S.P.R. 462, 467-68 (1993), and only requires proof of OPM approval where such approval is contested before the Board. In this case, the Board determined that Mr. Dobson had not raised this issue. Because Mr. Dobson is therefore calling into question OPM approval for the first time on appeal, instead of before the Board itself, the cases Mr. Dobson cites are not relevant. In any event, this court will ordinarily not hear new arguments for the first time on appeal, Bosley v. Merit Sys. Prot. Bd., 162 F.3d 665, 668 (Fed. Cir. 1998), and thus Mr. Dobson has waived this issue.

6. Mr. Dobson argues that the five cited violations of critical element #2 do not support his removal. Regarding the first error, the Board found that Mr. Dobson was originally given an assignment on June 6, 2006, that his supervisor reminded him about it by email on June 23. During a subsequent meeting, Mr. Dobson claimed that he had forgotten about the task. On appeal, Mr. Dobson argues that he was never given a due date for the assignment, so it could not technically be "late." He also argues that because the original assignment was dated June 6, and his performance review period did not start until June 23, any alleged error took place outside the review period.

However, one of the requirements of critical element #2 was that work be completed "in a timely and responsive manner," and the Board's determination that Mr. Dobson's performance on that requirement fell short is supported by evidence on the record that Mr. Dobson forgot about the assignment and needed to be reminded of it. Although the initial task was assigned on June 6, the error of Mr. Dobson's continued non-performance took place during the review period.

Mr. Dobson also argues that error number 4, which involved a job announcement, should not count against him because he was "told to amend the [job] announcement and he did." The notice of proposed removal, however, specifies that Mr. Dobson was instructed to amend the job announcement in a specific way, and that he failed to follow those instructions. Likewise, Mr. Dobson claims that error number 5 should not count against him because he recalled an improperly sent email less than one minute after it was initially sent. Although the error may have been corrected, Mr. Dobson's supervisors were concerned that such mistakes undermined the credibility of the office. The Board reviewed each of those errors and found that Mr. Dobson admitted making them, even though he protested that they were not sufficient to justify his removal. We hold that the Board's decision upholding those errors as constituting violations of critical element #2 is supported by substantial evidence.

Mr. Dobson argues that error number 2 and error number 3 took place outside of the review period. For error number 2, the proposed notice states that on June 25, 2006, Mr. Dobson's supervisor became aware that Mr. Dobson had incorrectly promoted a sailor. The notice does not state when Mr. Dobson made the entry that led to the incorrect promotion. Likewise, the notice does not state when Mr. Dobson

committed error number 3, but simply states that the matter was brought to Mr. Dobson's attention on July 14. The government's brief does not identify anywhere in the record where the dates of the commission of the errors can be found. Accordingly, we have not considered those errors as counting towards the two necessary for a violation of critical element #2 under the PIP. (Mr. Dobson additionally argues that those errors should have been counted as violations of critical element #4 rather than critical element #2, but given our holding that the evidence does not show that the errors occurred during the PIP period, we do not need to reach that issue.) Although those errors may have been improperly included, their inclusion is harmless because the three errors previously discussed adequately support the removal action, which required only two errors.

7. Mr. Dobson further claims that the administrative judge failed to consider various factual allegations. Mr. Dobson claims that the Board did not consider that he had more than "30 years of excellence in government and military service" and that "all was well" as of his November 2005 midyear review. The Board provided a detailed analysis of why the Navy's removal of Mr. Dobson was justified based on documented performance deficiencies during his 60-day evaluation period. Although Mr. Dobson may have performed at a satisfactory level during most of his career, the Navy was concerned that his performance had deteriorated. Under the rules applicable to performance improvement plans, only Mr. Dobson's performance during the 60-day evaluation period was relevant to the Board's analysis and decision.

8. Mr. Dobson argues that the Board failed to consider his claims of a hostile work environment. However, this court lacks jurisdiction to consider claims of

discrimination and therefore cannot reach that issue. <u>Williams v. Dep't of the Army</u>, 715 F.2d 1485, 1491 (Fed. Cir. 1983) (en banc). Mr. Dobson also contends that mitigating circumstances, including medical and health-related problems, were not considered by the administrative judge. But the record reveals that the Board considered that evidence and noted that Mr. Dobson had not submitted any documentation of a medical condition during the entire evaluation period, even though the performance improvement plan stated that Mr. Dobson should "notify [his supervisor] of any extenuating circumstances," and that counseling was available if he felt he had any problems.

9. Finally, Mr. Dobson argues that the administrative judge impermissibly failed to consider lesser penalties. However, in the context of a chapter 43 removal for unacceptable performance, the Board does not have the authority to lessen the employing agency's chosen penalty. <u>Lisiecki v. Merit Sys. Prot. Bd.</u>, 769 F.2d 1558, 1566-67 (Fed. Cir. 1985). We therefore uphold the Board's order sustaining Mr. Dobson's removal.