# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ALPHONSO BERNARD CLARK,<br>Appellant, | DOCKET NUMBER<br>DC-0432-13-0106-I-1 |
| v. | |
| SOCIAL SECURITY<br>ADMINISTRATION,<br>Agency. | DATE: August 7, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Marva Peace, Durham, North Carolina, for the appellant.

Sandra Stuart, Whiteville, North Carolina, for the appellant.

Amy Morelli, Natalie Liem, and Reginald V. Speegle, Esquire, Atlanta, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action taken pursuant to 5 U.S.C. § 4303.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant filed an appeal from the agency's action removing him from the position of Claims Representative, GS-0105-11, in the Supplemental Security Income program at the Sanford, North Carolina office. Initial Appeal File (IAF), Tab 1, Tab 10 at 32. The agency first found his performance deficient within a year after his appointment at the GS-09 level. *See* IAF, Tab 11 at 14-15; Tab 13 at 36. He was placed on a performance assistance plan (PAP) on April 20, 2010. IAF, Tab 11 at 15. His performance improved, and he was promoted to a GS-11 effective August 29, 2010. IAF, Tab 13 at 35. The appellant's performance deteriorated again by mid-year of the next rating period, and he was again placed on a PAP, effective September 7, 2011. IAF, Tab 12 at 80-82. When his work did not improve, *see id.* at 70, the agency placed him on a 120-day Opportunity to Perform Successfully (OPS) plan, effective October 28, 2011, *id.* at 66-69. The appellant requested a transfer to a different office. *Id.* at 65. The agency detailed him to the Fayetteville, North Carolina office on December 3, 2011, where he was assigned a new supervisor, the Fayetteville Operations Supervisor. *Id.* at 28-30.

He remained on the OPS plan in Fayetteville. *Id.* at 29. The Fayetteville Operations Supervisor proposed his removal on April 10, 2012. IAF, Tab 10 at 45-79. He was removed for "failure to perform at the minimum level of competence in two critical elements for his position: Demonstrates Job Knowledge and Achieves Business Results." *Id.* at 33.

¶3 The appellant had filed three separate equal employment opportunity (EEO) complaints in 2011 and 2012. IAF, Tab 8 at 87. The Equal Employment Opportunity Commission (EEOC) administrative judge consolidated the complaints and dismissed them, allowing the appellant to appeal his removal under mixed-case procedures. *Id.*; IAF, Tab 9 at 3-5. This appeal followed. IAF, Tab 1.

¶4 On appeal, the appellant alleged the following affirmative defenses: Harmful error and/or a violation of his due process rights; retaliation for prior EEO activities; and discrimination based on disability,[2] race (African American), color (black), age (49), and sex (male).[3] IAF, Tab 36 at 5-7; *see also* IAF, Tab 1 at 3, 4, 9-10. After a hearing by video conference, the administrative judge found that the agency had met its burden of proof concerning one of the critical

---

[2] The appellant asserted that he suffers from disabling health issues arising from prior military service, including hypertension, depression, and anxiety. IAF, Tab 9 at 84. He was certified 70% disabled by the Department of Veterans Affairs. IAF, Tab 24 at 4-5. The appellant did not allege that the agency violated the Uniformed Services Employment and Reemployment Rights Act of 1994 by discriminating against him based on his prior military service, and so we need not address that issue. *See McBride v. U.S. Postal Service*, 78 M.S.P.R. 411, 414-15 (1998).

[3] The appellant additionally claimed that the agency retaliated against him for whistleblowing, and he checked the boxes for various prohibited personnel practices on the appeal form. IAF, Tab 1 at 4-11. The administrative judge issued an extensive order regarding affirmative defenses and narrowed the issues during the prehearing conference. *See* IAF, Tabs 35-36.

elements[4] and rejected the appellant's affirmative defenses. The administrative judge thus affirmed the agency's action. IAF, Tab 50, Initial Decision (ID) at 44.

¶5　　　An agency may remove an employee for unacceptable performance pursuant to 5 U.S.C. § 4303 after showing by substantial evidence that: (1) the agency's performance appraisal system was approved by the Office of Personnel Management (OPM); (2) the employee's performance failed to meet the established performance standards in one or more critical elements of his position; (3) the agency established performance standards and critical elements and communicated them to the employee at the beginning of the performance appraisal period; (4) the agency warned the employee of the inadequacies of his performance during the appraisal period and gave him an adequate opportunity to improve; and (5) after an adequate improvement period, the employee's performance remained unacceptable in at least one critical element. *See Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 6 (2008).

The agency communicated performance standards to the appellant.

¶6　　　On review, the appellant alleges that the agency did not communicate his performance standards to him in advance as required. Petition for Review (PFR) File, Tab 1 at 5-6; *see Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1337 (Fed. Cir. 2004) (performance standards must be reasonable, based on objective criteria, and communicated to the employee in advance). He alleges that the agency generally informed him of what he needed to do to achieve acceptable performance, but the agency did not identify the specific measures he needed to take to improve his performance for each particular element, standard, and expectation. PFR File, Tab 1 at 6-7. He also alleges that his supervisor in

---

[4] The administrative judge decided the appeal based on the appellant's failure to achieve satisfactory performance in one critical element, Demonstrates Job Knowledge. IAF, Tab 50 at 27. The agency was only obligated to prove that the appellant's performance was unacceptable in a single critical element. *See Davis v. Department of Agriculture*, 29 M.S.P.R. 22, 23 n.* (1985).

Sanford failed to define her expectations clearly and in real and measurable terms in the OPS. *Id.* at 7-8.

¶7    Based on the record and hearing testimony, the administrative judge properly concluded that the agency showed by substantial evidence that the appellant's performance standards were valid and that it clearly and repeatedly communicated those standards to him. *See* ID at 11-13. The appellant's Sanford supervisor communicated the agency's performance standards in detail when she initially gave him a performance plan on October 29, 2010, *see* IAF, Tab 13 at 21-23, and again during his mid-year review on March 31, 2011, when she communicated the standards and expectations in detail with feedback on specific problems he was having, *see id.* at 19-20. She communicated such information during optional performance discussions held on June 24 and July 19, 2011. *See id.* at 8-11, 17-18. She also communicated in detail the critical elements for his performance plan, along with the performance standards and expectations, when she placed him on the September 2011 PAP, and again, when she initiated the OPS period. *See* IAF, Tab 12 at 66-69, 80-82; *see also id.* at 62-64. His Sanford supervisor additionally communicated to him the observable deficiencies that prevented him from performing successfully. *See, e.g.*, IAF, Tab 11 at 8-10, 17, 19, Tab 12 at 31, 67, 81. After the appellant was detailed to Fayetteville, his supervisor there reviewed his performance standards and expectations with him. IAF, Tab 12 at 28-29. His performance standards and expectations did not change during the detail in Fayetteville. *Compare id.* at 28, *with* IAF, Tab 13 at 21-23.

¶8    An agency may give content to an employee's otherwise valid performance standards by informing him of specific work requirements through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable performance, and responses to his questions concerning performance. *Baker v. Defense Logistics Agency*, 25 M.S.P.R. 614, 617 (1985), *aff'd*, 782 F.2d 1579 (Fed. Cir. 1986). Here, the

agency gave content to the appellant's performance standards both before and during the OPS. *See, e.g.*, IAF, Tab 12 at 31, Tab 13 at 8-11,17-18, Tab 32 at 3-16, 18, 20-25, 30-32. The agency's efforts included placing the appellant on his second PAP in September 2011, and assigning a mentor to work with him. *See* IAF, Tab 12 at 71-75, 80-82. The agency also assigned him a mentor in Sanford during the OPS period. IAF, Tab 10 at 46, Tab 12 at 68. When he was detailed to Fayetteville, his supervisor there met regularly with him and assigned him a mentor.[5] *See* IAF, Tab 11 at 3, 6-7. The agency thus showed by substantial evidence that it established performance standards and critical elements and communicated them to the appellant often, in advance, and in various ways.

The agency warned the appellant of performance deficiencies.

¶9    The appellant asserts on review that the agency failed to provide specific examples of deficient work for each critical element and performance standard. PFR File, Tab 1 at 6-7; *see Gonzalez*, 109 M.S.P.R. 250, ¶ 6 (an agency must warn an employee of the inadequacies of his performance during the appraisal period and give him an adequate opportunity to improve). The record shows, however, that the agency informed the appellant about specific errors over many months both during performance discussions and as a part of mentoring. *See, e.g.*, IAF, Tab 12 at 3-6, 8, 10, 31, Tab 13 at 10, 17, Tab 32 at 3-16, 18, 20-25, 30-32. The appellant's assertion that the agency failed to warn him of performance deficiencies is thus unavailing.

The OPS plan document was not defective.

¶10    The appellant argues that his Sanford supervisor used a "cut and paste" methodology to create the OPS document, assembling the document from portions of other documents issued earlier. PFR File, Tab 1 at 7-8. An agency's

---

[5] The Board has found that day-to-day training and assistance from a mentor, coupled with numerous progress discussions with management, provide a reasonable opportunity to improve performance. *Corbett v. Department of the Air Force*, 59 M.S.P.R. 288, 290-91 (1993).

methodology for creating a document in support of an opportunity to improve, however, is immaterial because the OPS document served its intended purpose. The document notified the appellant that he was failing to meet the performance standards and expectations for two critical elements of his position, Demonstrates Job Knowledge and Achieves Business Results. IAF, Tab 12 at 67. It advised him that he failed to process cases in a timely manner and to respond to supervisory questions about the status of specific cases. *Id.* at 66. It advised him that he had difficulty analyzing and evaluating information, made repeated processing errors, and did not appear to understand the agency's work processes. *Id.* The document further addressed how he might achieve a successful level of performance. *Id.* at 67.

¶11    The appellant also asserts that the OPS document was defective because it did not offer a basis for measuring improvement in "real and measurable terms." PFR File, Tab 1 at 8. The document, however, clearly stated that the appellant "must be able to complete [his] workloads accurately and timely" to demonstrate that he could adjudicate claims independently, and thus achieve a successful level of performance. IAF, Tab 12 at 68. It defined timely as "acting on information as soon as possible after receiving it and adjudicating claims as soon as possible after receiving all documentation." *Id.* Taken with the other information in the OPS document, this succinct statement informed the appellant of how he might improve his performance. The OPS document also explained that the appellant would receive regular feedback from his supervisor. *See Baker*, 25 M.S.P.R. at 617. The appellant's Sanford supervisor, however, testified that the appellant refused to meet with her when she sought to give him feedback regarding his progress. Hearing Transcript (HT), Vol. 1 at 108-10. Her notes for one meeting, which she gave to the appellant, address specific areas for improvement, including timeliness, organization, workload management, efficiency, and

subject-matter mastery. IAF, Tab 12 at 31. The appellant's assertion that the OPS document was defective is thus unavailing.[6]

The notice of proposed removal and notice of decision were not defective.

¶12        The appellant argues that the notice of proposed removal and notice of decision, both of which were prepared by the Fayetteville Operations Supervisor, do not specifically set forth the performance standards that he failed to meet and explain his deficiencies in meeting those standards. PFR File, Tab 1 at 6-7. He further argues that the examples of poor performance cited in these documents are inconsistent with the performance standards set forth in the PAP[7] and OPS. *Id.* The notice of proposed removal, however, summarized in considerable detail the performance standards that the appellant failed to meet during the OPS. IAF, Tab 10 at 45-46. These were drawn from the list of performance standards and expectations set forth in the OPS document. *See* IAF, Tab 12 at 67. The notice of proposed removal included several detailed examples of the appellant's failure to meet specific performance standards. *Id.* at 47-51. The agency gave the appellant an opportunity to respond, but he did so without challenging any of the information given in the examples. *Id.* at 43-44. The notice of decision reiterated some of the examples cited in the notice of proposed removal, *see id.* at 36-40, and the performance standards that the appellant failed to meet during the OPS, *see id.* at 33-34. The Fayetteville Operations Supervisor testified that the examples she cited in the notice of proposed removal and notice of decision represented the types of errors that occurred repeatedly during the appellant's OPS. HT, Vo1. 1 at 299-303. The appellant's argument therefore is unavailing.

---

[6] The appellant also asserts without further explanation or examples that "the OPS doubled in content and requirements (approximately one month later) when compared to the original [PAP]." PFR File, Tab 1 at 8. The Board generally does not address such bare and unsubstantiated allegations of error. *See Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992).

[7] To the extent that the September 2011 PAP is relevant, it listed all the critical elements for the appellant's position. *See* IAF, Tab 12 at 80.

The agency showed that the appellant received training.

¶13     The appellant argues that the agency did not show that it provided the training he needed.  PFR File, Tab 1 at 9.  To the contrary, the appellant received considerable one-on-one training both before and during the OPS period.  The agency assigned him a mentor during the September 2011 PAP to assist him with maintaining better control of his workload.  IAF, Tab 10 at 46, Tab 12 at 71-75.  He was assigned a mentor when the agency initiated the OPS period in Sanford.  IAF, Tab 10 at 46, Tab 12 at 68.  When he arrived in Fayetteville, the agency assigned him a new local mentor who continued to work with him on his areas of difficulty and trained him in additional types of claims processed in that office.  IAF, Tab 10 at 46, Tab 12 at 29; HT, Vol. 1 at 318-21.  The agency reduced the Fayetteville mentor's workload so that he would be available to assist the appellant extensively.  HT, Vol. 1 at 318.  Hence, the appellant's assertion that he did not receive training is thus unavailing.

The agency delegated the deciding official the authority to remove the appellant.

¶14     The appellant argues that the Fayetteville Operations Supervisor lacked the authority to remove him because she had served as the proposing official, and because her position description did not include such authority.  PFR File, Tab 1 at 8-9.  A proposing official and deciding official, however, need not be separate individuals.  *See Franco v. Department of Health & Human Services*, 32 M.S.P.R. 653, 657 (1987).  Moreover, section 4303 only requires that "an employee who is in a higher position than the employee who proposed the action" concur with the removal decision when the agency head is not the proposing official.  5 U.S.C. § 4303(b)(1)(D)(ii).  The Fayetteville Operators Supervisor testified that she removed the appellant under authority that her manager delegated to her, thus satisfying the statutory requirement that a higher-level employee concur with the removal decision.  *See* HT, Vol. 1 at 306; HT, Vol. 2 at 28-31.

<u>The administrative judge addressed the issues related to discrimination.</u>

¶15    In 2011 and 2012, the appellant filed three EEO complaints:  EEOC Nos. ATL-11-0079-SSA, ATL-11-0889-SSA, and ATL-12-0620-SSA.  *See* IAF, Tab 8 at 87.  He argues on review that the administrative judge "ignored" these complaints and the issues he thought they addressed.  PFR File, Tab 1 at 4-5; *see also id.* at 9-10.  The EEOC's administrative judge consolidated and then dismissed these complaints on the appellant's own motion, which allowed him to file a mixed-case appeal.  *See* IAF, Tab 9 at 3-5.  The record was extensively developed on the issues of discrimination and retaliation for prior EEO activity, *see, e.g.*, IAF, Tabs 8-9, 11-12, 35, 39, and the administrative judge addressed these issues at length in the initial decision, *see* ID at 28-43.  Review of her analysis and the record shows that she considered the entire body of evidence, drew appropriate inferences, and made reasoned conclusions on issues of credibility.  *See Broughton v. Department of Health & Human Services*, [33 M.S.P.R. 357](#), 359 (1987).

¶16    Additionally, the report of investigation (ROI) for the appellant's post-removal complaint, EEOC No. ATL-12-0620-SSA, was not yet available when the record was open below.[8]  *See* IAF, Tab 8 at 87.  The complaint pertains to alleged disparate treatment concerning training opportunities and the removal itself.  *See* IAF, Tab 9 at 7-18.  To the extent that the appellant is asserting that an ROI might contain new and material evidence that was not available when the record closed, or a new legal argument, *see* PFR File, Tab 1 at 4-5, his argument is unavailing.  The extensive record and testimony contain evidence regarding the issues in the complaint, and the administrative judge fully addressed all of his allegations of discrimination.  Notably, it was the appellant who sought to consolidate all of his EEO complaints soon after filing his post-removal complaint, *see* IAF, Tab 9 at 3, and he also opposed the agency's motion to

---

[8] The complaint was filed on July 6, 2012.  *See* IAF, Tab 9 at 7.

suspend case processing in the instant appeal until the ROI for that complaint was completed. *See* IAF, Tabs 15, 17. Accordingly, the appellant's arguments are unavailing, and he has offered no reason for the Board to disturb the initial decision.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.