# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ROBERT E. CANADA,
                Appellant,

       v.

DEPARTMENT OF THE AIR FORCE,
                Agency.

DOCKET NUMBER
DC-0752-14-0715-I-1

DATE: April 2, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

Allison B. Eddy, Esquire, Virginia Beach, Virginia, for the appellant.

Eric C. Francum, Joint Base Andrews, Maryland, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1     The agency has filed a petition for review and the appellant has filed a cross-petition for review of the initial decision, which sustained the charged conduct but mitigated the removal penalty to a 30-day suspension. For the reasons discussed below, we GRANT the petition for review and the cross-petition for review, VACATE the initial decision with respect to the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

penalty, and REMAND the case to the regional office for further adjudication in accordance with this Order.

## BACKGROUND

¶2    The appellant filed an appeal of the agency's action removing him from his position as Detective, GS-7.  Initial Appeal File (IAF), Tab 1.  The agency conducted an investigation into allegations of misconduct and subsequently removed the appellant on five specifications of conduct unbecoming.  All five specifications involved the appellant's alleged interactions with female employees of Balfour Beatty Communications working at Balfour Community Center (BBCC).  IAF, Tab 4 at 106 and 111-219.  Specification 1 alleged that, between August 2011 and August 2012, the appellant repeatedly commented about Ms. T's[2] "personal appearance which made her uncomfortable and caused her to hide or avoid [the appellant] when [he] came to" BBCC.  IAF, Tab 4 at 106.  Specification 2 stated that the appellant allegedly made remarks to Ms. B in the summer of 2012, directed at her relationship status and her sexual orientation, which made her "angry, embarrassed and uncomfortable." *Id*.  In Specification 3, the agency alleged that the appellant grabbed Ms. S's hand, swinging it, and then while looking at a vacant home allegedly stated "'We could have fun in there,' or words to that effect." *Id*.  Specifications 4 and 5 involve Ms. K and allegedly occurred in the summer of 2012.  The agency alleged in Specification 4 that, while walking with Ms. K in the medical clinic, the appellant stated:  "Do you notice how everyone is looking at us?  I bet they are wondering why we were walking together and if people thought we were sleeping together or just business.  We attract attention because I am an older black man and you are a younger white woman," or something similar. *Id*.  Finally, in Specification 5, the agency alleged that the appellant asked Ms. K, "whether her boyfriend was black,

_____

[2] We have used the initials of these employees instead of their full names to respect their privacy.

and when she stated he was [the appellant] replied, 'I know why you are with a black man. White woman love black men because they [expletive] good. If your boyfriend has issues in that area, I can take care of that,' or words to that effect." *Id*.

¶3      After holding a hearing, the administrative judge sustained the first three specifications, and thus, she sustained the charge of Conduct Unbecoming of a Federal Employee. IAF, Tab 21, Initial Decision (ID) at 3-7. The administrative judge did not, however, sustain Specifications 4 and 5. ID at 7-9. The administrative judge found further that the appellant failed to establish either that he was discriminated against based on his race or that his removal was in retaliation for engaging in protected activity. ID at 10-13. The administrative judge also found no merit to the appellant's claim that the agency committed harmful procedural error because the allegations in the proposal notice lacked the necessary specificity, finding that the appellant was able to make lengthy written responses and an oral response in which he addressed and denied each specification. ID at 13. After finding nexus, the administrative judge mitigated the penalty of removal to a 30-day suspension. ID at 15-16.

¶4      The agency has filed a petition for review. Petition for Review (PFR) File, Tab 4. The appellant has filed a response to the petition for review and a cross-petition for review. PFR File, Tab 6. The agency has filed a response to the appellant's cross-petition for review. PFR File, Tab 9.

### DISCUSSION OF ARGUMENTS ON REVIEW

Interim Relief

¶5      The appellant contends that the agency's petition for review should be dismissed because the agency has not properly and timely provided complete interim relief. Specifically, the appellant asserts that the agency has made errors in the process of providing him with the full pay that he is entitled to under interim relief and that the agency has not explained the dates for which he has

received pay. PFR File, Tab 6. The appellant asserts that as of December 30, 2014, when he filed his cross-petition for review, he has not received full pay retroactive to October 28, 2014, and the agency has not provided any estimate as to when he will receive the remaining pay. PFR File, Tab 6.

¶6       When an administrative judge has ordered interim relief under 5 U.S.C. § 7701(b)(2)(A), an agency must submit a certification with its petition for review that it has either provided interim relief or that it has made a determination that the appellant's return to, or presence in, the workplace would be unduly disruptive. 5 C.F.R. § 1201.115(b); *see DeLaughter v. U.S. Postal Service*, 3 F.3d 1522, 1524-25 (Fed. Cir. 1993); *Christopher v. Department of the Army*, 107 M.S.P.R. 580, ¶ 5, *aff'd*, 299 F. App'x 964 (Fed. Cir. 2008). If the agency determines that the appellant's return to the workplace would be unduly disruptive, the agency must nevertheless provide pay, compensation, and all other benefits during the interim relief period. 5 U.S.C. § 7701(b)(2)(B). In this instance, the agency has provided a statement sworn under penalty of perjury from the Commander of the 733 Security Forces, in which he asserted that the return of the appellant to his position would be unduly disruptive. PFR File, Tab 1. In addition, the agency has submitted a Standard Form (SF) 50-B showing that the appellant received an "Interim Appointment" to the position of Detective, effective October 28, 2014, pending the final decision of the Board. *Id.*

¶7       The appellant appears to be arguing that the agency did not timely comply with the administrative judge's interim relief order because it did not pay him the entire amount of pay he alleges that it owes him by the time it filed its petition for review. *See* PFR File, Tab 6. Generally, an agency must submit evidence of its compliance with an administrative judge's interim relief order no later than the deadline for filing its petition for review or cross petition. *See Phillips v. U.S. Postal Service*, 66 M.S.P.R. 143, 144 (1995). The agency, however, did not have to show that it actually provided the appellant with the proper amount of pay by the deadline date for filing its petition for review but only that it took appropriate

administrative action by this date, such as executing an SF-50 or SF-52, that would result in the issuance of his pay, which the agency has done here. *Luciano v. Department of the Treasury*, 74 M.S.P.R. 441, 449 (1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998) (Table). Further, while the appellant asserts that the agency's pay errors were not promptly corrected, the Board has found that reasonable inadvertent delays in issuing pay under an interim relief order do not show noncompliance with the interim relief order. *Luciano*, 74 M.S.P.R. at 450. In this case, the appellant has failed to establish that the agency's errors were intentional, or that they were not promptly corrected when brought to the agency's attention. After considering the parties' responses, we exercise our discretion not to dismiss the agency's petition for review. *See, e.g.*, *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-34 (Fed. Cir. 2004); *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 5 (2008); *Chavies v. Department of the Navy*, 104 M.S.P.R. 81, ¶ 4 n.1 (2006); 5 C.F.R. § 1201.115(b)(4).

Merits of the Charged Misconduct and Affirmative Defenses

¶8    On review, the agency argues that the administrative judge erred in finding that it did not prove Specifications 4 and 5, and the agency challenges the administrative judge's credibility findings regarding Ms. K. Specifically, the agency argues that the administrative judge's credibility determination, that Ms. K was not a "sufficiently credible witness to overcome the appellant's denial," results in both an illogical and implausible factual result. PFR File, Tab 4 at 6, 14-15.

¶9    However, the administrative judge examined Ms. K's testimony[3] and explained that she found inconsistencies between Ms. K's testimony and her prior statements. The administrative judge also found that Ms. K appeared to "have a tendency to embellish" and that she was angry with her former employer. ID at 8.

---

[3] The administrative judge's analysis of Specifications 4 and 5 is a little confusing as it appears that the administrative judge repeatedly referred to Ms. K, as "the appellant" rather than by her name or "the witness." ID at 8.

Thus, she concluded that Ms. K was not a credible witness. It is well-established that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). In this instance, while the administrative judge's *Hillen*[4] type analysis is not as thorough as it could have been because she did not explain why she found the appellant's denial more credible than Ms. K's testimony, the agency's assertions fail to provide a basis for granting review because they constitute mere disagreement with the administrative judge's determinations and fact findings. Thus, based on the record evidence, we see no basis upon which to disturb the administrative judge's credibility determinations in this regard.

¶10     On cross-petition for review, the appellant reasserts that his removal was the result of prohibited discrimination and retaliation for his prior equal employment opportunity (EEO) activity and the agency failed to prove the charged misconduct. PFR File, Tab 6. He has failed to show, however, that the administrative judge erred in sustaining three of the five specifications, as well as the charge of conduct unbecoming. The applicable law and the record evidence support the administrative judge's finding that the appellant's interactions with three female employees at the BBCC constituted conduct unbecoming. Further, as the administrative judge found, the appellant provided no evidence beyond a

---

[4]The Board found in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), that, to resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor.

mere allegation to support his contention of race discrimination, and he provided no evidence beyond the fact that the deciding official was aware of his prior EEO complaint to support his contention that the deciding official retaliated against him for his prior EEO activity. We have considered the appellant's arguments on review regarding the administrative judge's weighing of the evidence; however, we discern no reason to reweigh the evidence or substitute our assessment of the record evidence for that of the administrative judge. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same); *see also Haebe*, 288 F.3d at 1302 (the Board may overturn credibility determinations that are implicitly or explicitly based on demeanor only when it has "sufficiently sound" reasons for doing so).

¶11      In this connection, the appellant also reasserts that the agency failed to meet the burden of proving sexual harassment and failed to provide sufficient notice of the charge of sexual harassment to meet its due process requirements. However, as the administrative judge set forth in her Order and Summary of Prehearing Conference dated August 21, 2014, the agency charged the appellant with conduct unbecoming, not sexual harassment, and the proposal notice and decision letter made no reference to sexual harassment. *See* IAF, Tab 17. A charge of conduct unbecoming has no specific elements of proof and the charge is established by proving that the employee committed the acts alleged in the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Here, while the deciding official may have believed the appellant's conduct rose to the level of sexual harassment, which would require specific elements of proof, the appellant was not charged with sexual harassment. Thus, the administrative judge correctly found that the deciding official was required to determine if the appellant engaged in the misconduct as charged, conduct unbecoming, which the

deciding official did. Accordingly, the appellant has shown no error by the administrative judge in this regard, and we find no basis upon which to disturb the administrative judge's conclusion that the charge is supported by the evidence and that it warrants a disciplinary action by the agency.

Penalty

¶12    On review, the agency argues that the administrative judge erroneously applied *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999), when she mitigated the removal penalty to a 30-day suspension and that, while the administrative judge made a general reference to affording the agency deference when determining a penalty, her analysis fails to afford that deference and she does not explain how the agency's penalty falls outside the maximum limits of reasonableness. PFR File, Tab 4 at 13. When the Board sustains all of an agency's charges, the Board may mitigate the agency's original penalty to the maximum reasonable penalty when it finds the agency's original penalty too severe. *Lachance*, 178 F.3d at 1260. Notwithstanding that authority, the Board has long held that, in a case like this, when all of the charges are sustained, even when some of the specifications are not, the agency's penalty determination is entitled to deference and should be reviewed only to determine if the agency considered all of the relevant factors and exercised its discretion within the tolerable limits of reasonableness. *Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 9 (2013); *Penland v. Department of the Interior*, 115 M.S.P.R. 474, ¶¶ 7, 12 (2010). In doing so, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility but to ensure that managerial judgment has been properly exercised. *Penland*, 115 M.S.P.R. 474, ¶ 7.

¶13    As noted above, the administrative judge mitigated the appellant's removal, finding that the maximum reasonable penalty for the sustained misconduct was a 30-day suspension. ID at 16. She did so in large part based on the deciding

official's hearing testimony. ID at 15. The agency argues, however, that the administrative judge mischaracterized the deciding official's testimony when she mitigated the penalty. Specifically, the administrative judge found that "the deciding official testified that he would not have imposed the same penalty if all of the specifications were not sustained." ID at 15. The administrative judge stated further that, in most cases she "would not reevaluate the penalty merely because some specifications were not sustained if the overall charge was sustained. Here, however, the agency deciding official . . . stated that he would have not imposed the same penalty if he had not sustained all of the specifications." ID at 15.

¶14    We agree with the agency that the administrative judge apparently misconstrued the deciding official's testimony. At no time did the deciding official state "that he would have not imposed the same penalty if he had not sustained all of the specifications." Rather, on cross-examination, the appellant's attorney asked the deciding official "if there was just one specification in the proposed removal, would you have removed Mr. Canada?" Hearing Transcript (HT) at 158. The deciding official responded with "[i]f there was just one, no." *Id*. The appellant's attorney repeated this line of questioning with each of the specifications and the deciding official continued to state that, if there was only "one specification" or "an isolated incident" that was not witnessed by a third party, he would have believed the appellant. Further, the deciding official repeatedly stated that it was the culmination of four individuals who testified against the appellant, that the charged misconduct was not just a one-time occurrence but instead he concluded that it was "a pattern of misconduct." HT at 152-53, 157, 189. In addition, the deciding official testified that, even if the appellant were not a law enforcement officer held to a higher standard, he still would have considered removal because the appellant's case involved "four separate employees." HT at 204, 227. The deciding official also testified that he selected the penalty based on the appellant's "performance as a police officer or

as his duties of a police officer" and "that it wasn't an isolated incident on one individual." HT at 228. Thus, we agree with the agency that the administrative judge seems to have misconstrued the deciding official's testimony and then, rather than granting deference to the agency's penalty or explaining why the penalty fell outside the bounds of reasonableness, relied upon her misunderstanding of the deciding official's testimony to support mitigating the penalty.

¶15    In addition, the appellant challenges the penalty in his cross-petition for review. Specifically, he argues that the administrative judge failed to consider his comparator evidence and that a removal is inconsistent with the penalty given another employee for a similar, but more egregious, offense. PFR File, Tab 6. The record reflects that the administrative judge acknowledged that the appellant was raising a disparate penalty argument, *see* IAF, Tab 17 at 3, but yet she neglected to address his disparate penalty claim, or to mention any of the comparator employees in the initial decision, even though the appellant put on evidence for it, i.e., the appellant questioned the deciding official and submitted documentary evidence of potential comparators. IAF, Tab 14, at 17-35, Tab 16; HT at 196-97, 202-17.

¶16    Further, upon our review of the record, it appears that there is at least one individual who may be a comparator, i.e., a police officer who was charged with similar type of misconduct. IAF, Tab 14 at 17-35, Tab 16. Specifically, the appellant submitted evidence showing that an agency police officer, in the course of official business, went to the home of a military spouse to check on her well-being after a domestic dispute call, and he began an inappropriate relationship with her while he was at the home. IAF, Tab 14 at 32-35, Tab 16 at 38. The proposal notice for the comparator indicates that the police officer was previously briefed "not to respond to domestic calls alone due to the volatile nature of the situation, but he disregarded those instructions. The comparator's representative argued in his defense that the police officer's actions "were a

natural reaction by any single man in a similar situation." *Id.* at 40. The comparator employee was charged with Unprofessional Conduct and a 14-day suspension was proposed. The deciding official is that matter sustained the charge and upheld the penalty of a 14-day suspension. *Id.* The only reason provided by the agency for a difference in penalties between this case and the comparator case is the deciding official's testimony that each commander acts under the guise of his or her authority in command and that "[t]hey base their decisions on their judgment so they get guidance from lawyers and then they go forward on their own basis of what they feel is going to maintain good order and discipline in an organization." HT at 210. The deciding official testified further that, because "each commander has [a] different methodology, a different way of going forward on administering the justice the way they see fit," "different commanders could give different decisions." HT at 210, 216.

¶17 Nevertheless, although the initial decision generally set forth the applicable law for reviewing disparate treatment claims, *see* ID at 10, it did not mention the evidence concerning the purported comparator employee or explain why any of the similarities discussed above did not trigger the agency's burden to prove by preponderant evidence that there was a legitimate reason for the difference in treatment. Specifically, as the administrative judge noted, the consistency of an agency-imposed penalty with those imposed on other employees for the same or similar offenses is one factor the Board will consider in determining whether the penalty is reasonable. ID at 15; *see Yeager v. General Services Administration*, 39 M.S.P.R. 147, 151 (1988); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981). To establish disparate penalties, the appellant must show that the charges and the circumstances surrounding the charged behavior are substantially similar to those in the comparator's case. *Archuleta v. Department of the Air Force*, 16 M.S.P.R. 404, 407 (1983). If an appellant shows that the charges and circumstances surrounding the charged behavior of another employee are substantially similar, then the agency must prove a legitimate reason for the

difference in treatment by a preponderance of the evidence before the penalty can be upheld. *Villada v. U.S. Postal Service*, 115 M.S.P.R. 268, ¶ 10 (2010); *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 6 (2010).

¶18    To trigger the agency's burden, the appellant must show that there is enough similarity between both the nature of the misconduct and other factors, such as whether the appellant and the comparator were in the same work unit, had the same supervisor and/or deciding official, and whether the events occurred relatively close in time, to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 & n.4 (2012); *Lewis*, 113 M.S.P.R. 657, ¶¶ 12, 15. However, the Board does not have hard and fast rules regarding the "outcome determinative" nature of these factors. *Lewis*, 113 M.S.P.R. 657, ¶¶ 12, 15. Once the agency's burden is triggered, the Board will consider whether the agency actually treated similarly-situated employees differently, whether the difference in treatment was knowing and intentional, whether the agency began levying a more severe penalty for an offense without giving notice of a change in policy, and whether an imposed penalty was appropriate for the sustained charges. *Id.*, ¶ 15 & n.4 (noting that these factors are consistent with the court's rationale in *Williams v. Social Security Administration*, 586 F.3d 1365, 1368-69 (Fed. Cir. 2009)). Again, these considerations are relevant but not outcome determinative. *Lewis*, 113 M.S.P.R. 657, ¶ 15 n.4. Furthermore, an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include conclusions of law and legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). As the hearing official, the administrative judge is in the best position to resolve these questions. *Wilson v. Department of Homeland Security*, 118 M.S.P.R. 62, ¶¶ 4, 7 (2012).

¶19    Here, because the administrative judge apparently misconstrued the deciding official's testimony to support mitigating the removal penalty to a

30-day suspension, and because she failed to specifically address the appellant's disparate penalty argument in the initial decision, it is necessary to remand this appeal for further analysis of the penalty. In addressing the penalty, the administrative judge must reconsider the penalty in light of our analysis of the deciding official's testimony. The administrative judge also must resolve the question of whether the appellant was subjected to a disparate penalty and whether the agency met its corresponding burden to show a legitimate reason for the difference in treatment. *See Villada*, 115 M.S.P.R. 268, ¶ 12. On remand, the administrative judge also should consider whether the deciding official's testimony that he "was using the incident as an example, but not [the appellant]" and that he "showed that the command will not tolerate any type of sexual misconduct," was any indication that the agency began levying a more severe penalty for an offense, and, if so, whether the agency provided notice of a change in policy. *See* HT at 194.

¶20    Accordingly, we GRANT both the agency's petition for review and the appellant's cross-petition for review, VACATE the initial decision with respect to the penalty determination, and REMAND the appeal for further adjudication.

## ORDER

¶21    For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                        _____
                                     William D. Spencer
                                     Clerk of the Board

Washington, D.C.