## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

WILLIAM L. OWENS,
             Appellant,

          v.

DEPARTMENT OF THE ARMY,
             Agency.

DOCKET NUMBER
AT-315H-14-0479-I-1

DATE: September 21, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joe L. Brown, Esquire, Savannah, Tennessee, for the appellant.

Joree G. Brownlow, Esquire, Cordova, Tennessee, for the appellant.

Allen S. Black, Esquire, and Sherry E. Blount, Memphis, Tennessee, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1        The agency has filed a petition for review of the initial decision, which: (1) did not sustain the charge of inability to perform the essential duties of the marine electrician position; (2) sustained the charge of refusal to accept suitable

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

employment; (3) concluded that the appellant did not prove his affirmative defense of disability discrimination; (4) found that no penalty was the maximum reasonable penalty for the sustained misconduct; (5) reversed the removal and ordered the agency to reinstate the appellant; and (6) awarded interim relief. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        Effective February 11, 2014, the agency removed the appellant from his marine electrician position based on two charges: (1) inability to perform the essential duties of his position; and (2) refusal to accept suitable employment. Initial Appeal File (IAF), Tab 11, Subtabs 4c-4d. The appellant filed a Board appeal, and a hearing was held. Hearing Transcript (HT). The administrative judge issued an initial decision finding that: (1) the agency failed to prove that the appellant was unable to perform the essential duties of his position; (2) the agency proved that the appellant refused to accept suitable employment when he did not accept the agency's offer of an administrative support assistant position;

(3) the appellant failed to establish that the agency discriminated against him on the basis of his disability; and (4) the maximum penalty for the sustained charge was no penalty. IAF, Tab 24, Initial Decision (ID). The administrative judge therefore ordered the agency to cancel the removal action and retroactively restore the appellant, effective February 11, 2014, and to provide him with interim relief. ID at 20-21. The agency has filed a petition for review, the appellant has filed a response, and the agency has filed a reply. Petition for Review (PFR) File, Tabs 1, 4, 6.[2] The appellant also has filed a petition for enforcement of interim relief and a request to dismiss the agency's petition for review due to noncompliance with the interim relief order, to which the agency responded. PFR File, Tabs 3, 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶3        On review, the agency argues that the administrative judge erred by: (1) awarding back pay for the period that the appellant was not ready, willing, and able to perform his duties; (2) failing to consider evidence regarding the inherent dangers of working on barges and the appellant's inability to perform his duties due to the heightened risk associated with his exposure to these dangers in light of his medical condition; and (3) considering reasonable accommodations because the appellant refused to cooperate with the agency's attempt to determine the extent of his physical limitations. PFR File, Tab 1 at 17-22. The agency also asserts that the administrative judge committed factual errors, including that the appellant could safely perform the essential functions of his position with an accommodation and that the accommodations identified by the administrative judge were inconsistent with the March 2, 2012 "permanent" restrictions, the

---

[2] In his opposition to the agency's petition for review, the appellant argues that the agency's submission was untimely filed. PFR File, Tab 4 at 4-5. The Federal Express receipt attached to the agency's submission indicates that the petition for review was timely filed. PFR File, Tab 1; *see* 5 C.F.R. § 1201.114(e). To the extent that the Office of the Clerk of the Board identified a different and later filing date for the petition for review, PFR File, Tab 2, this error does not warrant a different outcome.

May 22, 2013 temporary restrictions, and the September 2013 functional capacity evaluation. *Id.* at 23-29.[3] For the following reasons, we find that these arguments are unavailing.

We deny the appellant's motion to dismiss the agency's petition for review for failure to comply with the interim relief order.[4]

¶4 The appellant alleges that the agency did not issue the paperwork required to put him in a pay status nor did it reinstate any of the pay and benefits of the marine electrician position. PFR File, Tab 3. He notes that the only Standard Form 50 submitted by the agency shows that his removal was cancelled. *Id.* at 4, 6. The appellant avers, among other things, that he was not being paid at the appropriate hourly rate and that he learned that he owed back premiums for his health insurance. PFR File, Tab 4 at 15-16. In response, the agency acknowledges that there were various delays in the agency's compliance with the interim relief order, but it explains that these delays were due in part to complications arising from the appellant's prior enrollment in Office of Workers' Compensation Programs (OWCP) and his extended leave without pay status, a system payment error with the Defense Finance and Accounting Services that needed to be resolved, and the apparent cancellation of his prior health insurance by the provider due to nonpayment of premiums after his OWCP wage loss benefits were terminated. *E.g.*, PFR File, Tab 5, Subtabs 2-3.

¶5 If an agency fails to establish its compliance with the interim relief order, the Board has discretion to dismiss its petition for review, but the Board need not do so. *Kolenc v. Department of Health & Human Services*, 120 M.S.P.R. 101,

---

[3] Because the appellant chose not to file a petition for review of the initial decision, we affirm the administrative judge's conclusions that the agency proved that he refused to accept suitable employment and that he did not prove his affirmative defense of disability discrimination. ID at 5-6, 19.

[4] The Board will not entertain a motion to enforce an interim relief order. *Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 5 (2007), *aff'd*, 301 F. App'x 923 (Fed. Cir. 2008). Therefore, we only will consider the appellant's submission as a motion to dismiss the petition for review.

¶ 11 (2013); *see Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-34 (Fed. Cir. 2004). Under the circumstances of this case, we do not exercise our discretion to dismiss the agency's petition for review because the agency has submitted evidence showing that it has substantially complied with the interim relief order and that its delayed compliance with the initial decision was due to the complications listed above. PFR File, Tabs 4-5. In particular, the debt for the outstanding health insurance premiums and the lapse in health insurance coverage appear to have been due to OWCP's decision to terminate the appellant's benefits after he refused to accept the administrative support assistant position, and we find that this lapse did not constitute agency noncompliance. *See, e.g.*, *Crickard v. Department of Veterans Affairs*, 92 M.S.P.R. 625, ¶ 4 n.2 (2002) (rejecting the appellant's request to dismiss the agency's petition for review for failure to comply with the interim relief order because, among other things, the apparent lapse in the appellant's health insurance coverage was inadvertent and not the agency's fault, and the apparent error on the insurance carrier's part had been corrected as a result of the agency's further actions), *overruled on other grounds by Koehler v. Department of the Air Force*, 99 M.S.P.R. 82 (2005).

The administrative judge properly concluded that the agency did not prove the charge of inability to perform the essential duties of the marine electrician position.

¶6        The agency does not challenge the administrative judge's conclusion that the appellant's position was not subject to medical standards or physical requirements. ID at 8, 11. Accordingly, for the agency to prevail on the inability to perform charge, it must prove: (1) a nexus between the employee's medical condition and observed deficiencies in his performance or conduct; or (2) a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014) (citing *Marshall-Carter v. Department of Veterans Affairs*, 94 M.S.P.R. 518, ¶ 10 (2003), *aff'd*, 122 F. App'x 513 (Fed. Cir. 2005));

*see Clemens v. Department of the Army*, [120 M.S.P.R. 616](#), ¶ 5 (2014). In other words, the agency must establish that the appellant's medical condition prevented him from being able to safely and efficiently perform the core duties of his position. *See Fox*, [120 M.S.P.R. 529](#), ¶ 25. In determining if the agency has met its burden, the Board will consider whether a reasonable accommodation exists that would enable the appellant to safely and efficiently perform those core duties. *See id*. However, for the limited purposes of proving the charge, the agency is not required to show that it was unable to reasonably accommodate the appellant by assigning him to a vacant position for which he was qualified; whether it could do so goes to the affirmative defense of disability discrimination and the reasonableness of the penalty. *Id*.

¶7        Regarding the administrative judge's conclusion that the agency did not prove a nexus between the appellant's medical condition and noted deficiencies in his performance or conduct, the agency argues that the administrative judge improperly considered accommodations in addressing this issue because of the appellant's "refusal to cooperate" with the agency's attempts to determine the extent of his limitations. PFR File, Tab 1 at 21-22; ID at 14-17. We are not persuaded that this argument warrants a different outcome. Both the administrative judge and the agency acknowledged the general rule that an administrative judge may consider whether a reasonable accommodation exists to allow the appellant to perform his essential duties, but an exception to this rule limits such consideration if the appellant refuses to cooperate with the agency. PFR File, Tab 1 at 21-22; ID at 7 n.2 (citing *Brown v. Department of the Interior*, [121 M.S.P.R. 205](#), ¶ 19 (2014)). We recognize that, in the functional capacity evaluation (FCE), the evaluator noted the appellant's lack of consistent effort. IAF, Tab 6 at 16. However, the agency cited no evidence to show that it requested that the appellant provide updated or additional medical information and he refused. Indeed, the appellant testified that he asked for a full release from his doctor, but he had not yet received one. HT 2 at 94. The agency's

Human Resources Specialist testified that she reviews OWCP files on a periodic basis and would contact the Department of Labor to obtain updated medical reports, but, for reasons that are unclear, she did not do so for the appellant. HT 1 at 188-89, 226; *see* HT at 216 (the Human Resources Specialist explained her belief that, after the appellant's temporary restrictions were "lifted," his "permanent" restrictions would remain in effect). Because there is no evidence that the agency requested additional or updated medical documentation, and no evidence that the appellant refused to comply with this request, we discern no error with the administrative judge's consideration of potential accommodations for the appellant in his assessment of whether the agency proved this charge.

¶8        We also have considered the agency's contention that the accommodations identified by the administrative judge were inconsistent with the appellant's "permanent" restrictions, the temporary medical restrictions, and the FCE, PFR File, Tab 1 at 17-23, but we are not persuaded that these arguments warrant a different outcome. Regarding the agency's assertion that the administrative judge failed to consider the FCE and how the FCE relates to the reasonable accommodation issue, the administrative judge discussed the FCE in the background section in the initial decision. ID at 4. His failure to specifically discuss the FCE in his analysis of the accommodation issue does not mean he did not consider it. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). We have considered the FCE, but we find that it has limited relevance to the accommodation issue. Importantly, the FCE's purpose was to determine the appellant's functional abilities as they related to the essential physical demands of the administrative support assistant position, not the marine electrician position. IAF, Tab 6 at 16-27. Moreover, the FCE evaluator noted that the appellant "demonstrated a consistency of effort at 58.3%," which suggested that the appellant "presented with significant observational and evidence[-]based contradictions resulting in consistency of efforts discrepancies and self-limiting

behaviors." *Id*. at 16. The OWCP Hearing Representative, who determined that OWCP properly terminated the appellant's entitlement to benefits, noted that, because the FCE report concluded that the appellant did not make a consistent effort, it "is not probative as to the [appellant's] work capacity," and the "weight of medical evidence rests with" the prior opinion that he could work 8 hours per day with restrictions. IAF, Tab 11, Subtab 4a at 5. Although the OWCP Hearing Representative's determination on the probative value of the FCE is not binding on the Board, we similarly conclude that the FCE has limited, if any, probative value regarding the appellant's ability to perform the essential functions of the marine electrician position. We therefore discern no error with the administrative judge's decision not to rely on the FCE in his discussion of the accommodation issue.

¶9        Regarding the administrative judge's allegedly improper exclusion of the appellant's temporary restrictions, the May 22, 2013 report itself indicated that his restrictions only lasted for 3 months, and the agency did not propose the appellant's removal until November 5, 2013. IAF, Tab 11, Subtab 4d at 1-3 & Enclosure 3. We agree with the administrative judge that, absent any evidence that the temporary restrictions extended beyond the 3-month time period indicated in the report itself, it was improper to consider such evidence in determining whether the appellant was physically unable to perform the duties of his position. ID at 11.[5]

¶10       We therefore must consider whether the accommodations identified by the administrative judge are consistent with the March 2, 2012 "permanent" restrictions, which indicated that the appellant was limited to 6 hours of walking

---

[5] In the initial decision, the administrative judge noted that some of the "permanent" restrictions are more restrictive than the subsequent, "temporary" restrictions. ID at 11 n.3. *Compare* IAF, Tab 11, Subtab D, Enclosure 2, *with id*., Enclosure 3 (the permanent restrictions limited twisting and bending/stooping to 2 hours but the temporary restrictions only limited these tasks to 4 hours). In light of our disposition, we need not reconcile this discrepancy.

and standing, 2 hours of twisting, bending/stooping, and climbing, and 2 hours and 30 pounds of pushing and pulling, that he was unable to squat or kneel, but that he had no restrictions regarding sitting, reaching, and reaching above his shoulders. IAF, Tab 11, Subtab 4d, Enclosure 2. The appellant's doctor also answered "yes" to a question regarding whether the appellant was "able to work for 8 hours per day with restrictions." *Id.*

¶11 The agency asserts that the administrative judge erroneously found that a coworker assisting the appellant, the appellant sitting on a chair, bucket, or stool, and the appellant "lying on his side" were proper accommodations for his kneeling and lifting restrictions.[6] PFR File, Tab 1 at 24-26; ID at 14-16. The agency cites to the testimony of witness L.F., who stated that "[s]ometimes" someone might not be available to help the appellant, and it argues that sitting on a chair, bucket or stool "increases" the appellant's bending/stooping activities beyond the 2-hour restriction identified in the permanent restrictions. PFR File, Tab 1 at 24-26. Here, too, the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *See Marques*, 22 M.S.P.R. at 132. Moreover, the agency's assertions appear to be speculative, and we are not persuaded that the identified accommodations would conflict with the permanent restrictions in this manner.

¶12 Regarding the agency's contention that the administrative judge ignored the discrepancy between the appellant's permanent medical restrictions, which stated that he could work an 8-hour day, and the witness' testimony that the appellant's work schedule often exceeded 8 hours a day for several months, PFR File, Tab 1 at 26-27, we note that the administrative judge mentioned this restriction in the background section of the initial decision, ID at 3; *see Marques*, 22 M.S.P.R. at 132. Regarding the agency's assertion that a coworker assisting the appellant and

---

[6] The agency does not appear to challenge the administrative judge's conclusion that kneeling and lifting are the means by which a marine electrician would perform the essential functions of his position, not the essential functions themselves. ID at 13-14.

an alteration of the appellant's time and attendance requirements would be an undue burden, PFR File, Tab 1 at 24, 27, the agency does not cite to, and we are unaware of, any evidence that purports to explain how either of these accommodations would have been an undue burden on the agency. *See Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995) (finding that the statements of a party's representative in a pleading do not constitute evidence).[7] Thus, we are not persuaded that this argument warrants a different outcome. We therefore discern no basis for disturbing the administrative judge's finding that the agency failed to establish a nexus between the appellant's medical condition and observed deficiencies in his performance or conduct. ID at 17.

¶13        The agency further contends that the administrative judge failed to consider evidence regarding the inherent danger of working on barges and the appellant's inability to perform his duties due to the heightened risk associated with his exposure to these dangers in light of his medical condition. PFR File, Tab 1 at 12-21. Contrary to the agency's assertion, the administrative judge briefly discussed in the initial decision the inherent dangers of the marine electrician position. In pertinent part, the administrative judge noted that the proposed removal did not allege that the appellant was unable to perform his duties due to the heightened risk associated with his exposure to the inherent dangers of working on barges in light of his medical condition, and he concluded that the

---

[7] The agency cites generally to the Special Panel decision in *Alvara v. Department of Homeland Security*, 121 M.S.P.R. 613 (2014), for the proposition that an alteration of the time and attendance requirements for the marine electrician position would place an undue burden on the agency. PFR File, Tab 1 at 27. We disagree with the agency's interpretation of the Special Panel decision. Rather, the Special Panel, MSPB Vice Chairman Wagner dissenting, affirmed the Equal Employment Opportunity Commission's determination that the agency did not meet its burden to show that the appellant's requested accommodation, a modification of his work schedule, would be an undue burden because it "merely state[d] in a conclusory manner that an accommodation would be an undue hardship." *Alvara*, 121 M.S.P.R. 613, ¶¶ 13-14, 44. Similarly, the agency attorney's assertion of undue burden is conclusory and not supported by any persuasive evidence.

agency could not rely on such evidence in support of its charges.  ID at 17 (citing *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989)).[8]  The administrative judge acknowledged that there was hearing testimony regarding the inherent dangers of working on barges and the "possibility" that, due to the appellant's physical condition, he could be at a higher risk than other employees concerning such dangers.  ID at 17.  He further acknowledged the appellant's concession that the duties themselves, aside from being performed in a dangerous environment, also involved some risk.  *Id.*  The administrative judge found, however, that the agency presented no evidence to establish that the appellant's medical condition made it highly probable that the manner in which he performed his duties would result in injury to him or others.  *Id.*

¶14    The agency argues that it gave the appellant notice that it believed he could not safely perform the essential functions of his position.   PFR File, Tab 1 at 13-14.  Even if the proposal notice sufficiently alleged that the appellant could not safely perform the essential functions of the marine electrician position due to his medical condition, we discern no error with the administrative judge's conclusion that the agency did not meet its burden to show a high probability, given the nature of the work involved, that the appellant's condition may result in injury to himself or others.

¶15    Importantly, the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision.  *Marques*, 22 M.S.P.R. at 132.  We have considered the agency's assertion that the appellant "had a history of repeated falls due to his knee injury"

---

[8] We have considered the agency's assertion that the administrative judge improperly relied on *Gottlieb* because *Gottlieb* involved different charges and different facts.  PFR File, Tab 1 at 13.  We are not persuaded that these differences warrant a different outcome because the propositions articulated in *Gottlieb* that were referenced by the administrative judge, i.e., that the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency and that the Board may not substitute what it considers to be a more adequate or proper basis, are equally applicable in this adverse action appeal.

and its references to the testimony that the appellant's physical presence was required on the Bank Grading Unit or other units, that the locations on which he must perform his essential duties are inherently dangerous for personnel without medical restrictions, and that employees with no medical restrictions have fallen off the unit and have been crushed, drowned, or required emergency rescues. PFR File, Tab 1 at 15-21. Based on our review of the record, we agree with the administrative judge that, while possible, there is not a high probability that the appellant's medical condition may result in injury to himself or others, given the nature of the work involved. ID at 17. *Compare* http://legal-dictionary.thefreedictionary.com/high+probability (defining a "high probability" as "almost certainly, favorable prospect, in all likelihood, in most instances, with a high degree of certainty"), *with The American Heritage Dictionary of the English Language*, 1370 (Houghton Mifflin Co. 4th ed. 2000) (defining "possible" as "[c]apable of happening, existing, or being true without contradicting proven facts, laws, or circumstances").

¶16        This case stands in sharp contrast to *Clemens*, 120 M.S.P.R. 616, ¶ 9, where the Board found a high probability that Mr. Clemens' medical condition may result in injury to others. Mr. Clemens was a Supervisory Public Safety Dispatcher, and, in this capacity, he was required, among other things, to initiate "immediate, appropriate, emergency response," provide "advanced life support," such as instructing callers on how to perform cardiopulmonary resuscitation, the Heimlich maneuver, or emergency childbirth and how to open an airway or control bleeding, and give instructions "regarding what to do, and what not to do, prior to the arrival of pre-hospital care providers." *Id.*, *¶* 8. Mr. Clemens "suffered a significant loss of speech ability" after a stroke and related complications, and the agency removed him for physical inability to perform the essential functions of his position. *Id.*, ¶ 2. The Board found that "significant verbal communication was an essential function of the appellant's position," and it concluded there was a high probability, given the nature of the work involved,

that Mr. Clemens' medical condition may result in injury to others, and it sustained the inability to perform charge. *Id.*, ¶¶ 8-9. Here, however, notwithstanding the inherent dangers of the appellant's work environment, we do not view his medical condition as creating a situation in which it is highly probable that he or others will be injured.

¶17    Because the agency has not persuaded us that the administrative judge erred in his conclusion that it did not prove the charge of physical inability to perform the essential functions of the marine electrician position, we affirm the initial decision in this regard. The agency has not specifically challenged the administrative judge's decision not to impose a penalty for the sustained charge of refusal to accept suitable employment, ID at 18-19, and we affirm this decision.

We decline to address the agency's assertion that the appellant was not entitled to back pay because entitlement to back pay is normally a compliance matter.

¶18    In the initial decision, the administrative judge ordered the agency to cancel the removal, retroactively restore the appellant effective February 11, 2014, and pay him the appropriate amount of back pay. ID at 20. The agency argues that the appellant was not ready, willing, and able to work, and, thus, he was not entitled to back pay. PFR File, Tab 1 at 7-8 (citing *Hodges v. Department of Justice*, 121 M.S.P.R. 337 (2014)).

¶19    The agency correctly notes that a back pay award may not include any period during which an employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury. *See* 5 C.F.R. § 550.805(c)(1). In *Hodges*, 121 M.S.P.R. 337, ¶ 24, the Board noted that entitlement to back pay is normally a compliance matter, but it decided the issue of Mr. Hodges' entitlement to back pay due to the "unique circumstances" of that case, including that the agency did not learn that Mr. Hodges was able to return to work without restrictions until his doctor testified at the hearing, at which time the agency reinstated him. The Board ultimately concluded that Mr. Hodges was

not entitled to back pay because he was not ready, willing, and able to work during the removal period. *Id.* The agency has not identified any similar "unique circumstances" in this matter, and, in the absence of current medical documentation in the record,[9] we believe it is not appropriate to render a decision on the appellant's entitlement to back pay at the merits stage. Because this order constitutes the Board's final decision in the removal appeal, the parties shall follow the procedures, described below, regarding calculation and payment of back pay. If the appellant believes that the agency has not complied with the Board's order regarding back pay, he should follow the applicable procedures for filing a timely petition for enforcement. *See* 5 C.F.R. § 1201.182.

**ORDER**

¶20    We ORDER the agency to cancel the removal and to restore the appellant effective February 11, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶21    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

---

[9] The agency appears to rely on the appellant's "permanent" restrictions, which were nearly 2 years old when his removal was effected, and those restrictions do not account for his subsequent rotator cuff surgery in March 2013 or any subsequent improvement in his mobility in this or other areas. IAF, Tab 11, Subtab 4a at 3.

¶22     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶23     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶24     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You

must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                        _____
                                      William D. Spencer
                                      Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

a. Outside earnings with copies of W2's or statement from employer.
b. Statement that employee was ready, willing and able to work during the period.
c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.